## LEROY HAVERLY v. STATE LINE ETC. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD
COUNTY.

Argued March 19, 1889—Decided March 25, 1889.
[To be reported.]

(*a*) The owner of timber land agreed with the plaintiff, the owner of
a saw-mill, that the latter would cut, haul, stock and saw into lumber
all the timber fit for sawing on a certain tract of land, and to do, furnish
and provide everything to stock, manufacture and neatly pile the lumber
after it was sawed.

(*b*) In consideration whereof the plaintiff was to receive from the land-
owner, after the lumber was sawed and piled, certain shares of each
kind of lumber, the lumber, however, to remain the property of the
land-owner and none of it to be removed from the mill until after it had
been divided.

1. In such case, if logs which had been cut by the plaintiff under said
contract were burned by a fire occasioned by the negligence of a rail-
road company, the plaintiff had such interest in them as entitled him to
maintain an action therefor against the railroad company.

2. A settlement between the land-owner and the defendant company
did not bar the plaintiff from bringing suit against the latter to recover
the value of his interest, whatever it was, and parol evidence was ad-
missible to show that a settlement receipt of the landlord was for the
landlord's interest alone.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and
WILLIAMS, JJ.

No. 337 January Term 1888, Sup. Ct.; court below, No.
382 September Term 1882, C. P.

On June 22, 1882, a summons was issued in an action in case
wherein, as afterwards amended, LeRoy Haverly was plaintiff
and the State Line and Sullivan Railroad Company, defendant,
to recover the value of a quantity of timber destroyed by a fire
which it was claimed had been caused by the defendant's neg-
ligence. Issue.

At a second trial of the cause on February 2, 1887, it was
made to appear that on April 26, 1879, Mercy B. Taylor was
the owner of a tract of land in Albany and Monroe townships,

Bradford county, through which ran the defendant's · line of railroad, when with LeRoy Haverly she executed the contract of which the following is a copy:

"Witnesseth, That the said Leroy Haverly for and in consideration of the covenants hereinafter stated, does hereby agree to cut, haul, stock and saw into lumber and pile all the timber fit for sawing, on the lot of land owned by said Mercy B. Taylor in Albany and Monroe townships, in the county aforesaid, being the same lot purchased by said Mercy B. Taylor, at sheriff's sale, as the property of Lyman Blackman, and known as the Blackman lot, containing between three and four hundred acres of land, and to set up a saw-mill on said lot and haul and saw all the timber on said lot that is already cut or down, and do all the work, cut out roads, lay tracks and do and furnish and provide everything to stock, manufacture and neatly pile the lumber after it is sawed, as shall be directed by said Mercy B. Taylor, or her agent, the lumber to be sawed even and true and to such sizes as may be directed, and if the lumber is not sawed in a good and workmanlike manner, then said Haverly shall take and apply on his saw bill the same. And it shall be piled in the best manner to protect it from the weather and convenient to the railroad track. The mill to be set up and ready to commence work by the first day of July, 1879, and to work up all the lumber fit to saw within two years, or by the first day of July, 1881; and to cut no timber on said lot only for sawing or for building on the premises. All the hemlock bark, peeled and unpeeled, is reserved. And for and in consideration of a full performance of these covenants of the said LeRoy Haverly, the said Mercy B. Taylor agrees to give, deliver and count to him after the lumber is sawed and piled, lumber as follows, to wit: One half of the ash, basswood, pine, cucumber, whitewood, butternut, cherry and hickory; three fifths of the oak, maple, birch and chestnut; and three fourths of all the beech and hemlock on said lot. All the lumber shall remain the property of the said Mercy B. Taylor, and none removed away from the mill until after it has been divided, and at the end of two years to have the timber on the lot all worked up and deliver up possession of the premises to said Mercy B. Taylor. And if the parties to this contract shall disagree as to whether the timber is sawed according

to this agreement, or whether the timber has all been taken off the lot that is suitable and fit to be sawed, and whether the contract is finished, then in that case they hereby appoint to decide these questions for us John F. Satterlee and N. A. Shaw to decide for us; and if they disagree then they shall choose a third man and their decision shall be final.

" In testimony whereof," etc.

A like agreement was made on November 13, 1879, with reference to the timber upon twenty acres of land adjoining the tract referred to in the foregoing agreement.

On June 10, 1880, the plaintiff, in pursuance of said contract, had erected upon the land a saw-mill and a boarding-house ; had constructed roads and bridges necessary to haul the logs to his mill and had cut into logs and skidded several hundred thousand feet of said timber, when all the cut and skidded logs and the balance of the felled and peeled timber trees were burned up by a fire running over the tract, caused, as was claimed to be established by the testimony, by the negligence of the defendant company's employees.

When the plaintiff had rested, the defendant put in evidence the following receipt :

" Office of S. L. & S. R. R. Co.,
Towanda, Pa., Sept. 9, 1881.

" Received of the S. L. & S. R. R. Co., three hundred and fifty dollars, in full of all demands for damages claimed for burning timber on Blackman tract.

MRS. MERCY B. TAYLOR,
By attorneys, Elsbree & Son."

In the defendant's rebuttal, it was shown by the testimony of Mr. N. C. Elsbree, who made the settlement with the railroad company evidenced by the foregoing receipt, that it was for 200,000 feet of hemlock in logs, at the rate of $1.75 per thousand, as the interest of Mrs. Taylor alone therein. The measurement or estimate had been made for Mrs. Taylor by John A. Codding, who was called as a witness by the plaintiff :

Q. In the statement there you have 200,000 feet of hemlock in logs at $1.75 per thousand. What does that $1.75 per thousand mean ? What interest is that ? Whose interest is that ?

Objected to, that the paper must speak for itself, and that no explanation of Mr. Codding, not communicated to the defendant, is evidence.

Plaintiff's counsel: We offer to show that that $1.75 per thousand represented Mrs. Taylor's interest in the lumber that was burned, and no more.

By the court: There does not seem to be any obscurity about the paper, and I do not think it competent for this witness to state what he meant by these expressions. Offer refused; 'exception.[1]

At the close of the testimony, the court, McCollum, P. J., 34th district, holding special term, charged the jury as follows:

In this case the plaintiff seeks to recover the value of a quantity of logs destroyed in May, 1880, by a fire, which, it is claimed, was the direct result or consequence of the defendant's negligence. The logs were the property of Mercy B. Taylor, and upon her land. Upon that land the plaintiff erected, in 1879, a saw-mill, and built roads and bridges to facilitate the hauling of the logs to the mill. His possession of the land, and his interest in, or relation to the property destroyed, are explained and defined by his contract with Mercy B. Taylor, under date of April 6, 1879.

The plaintiff claims that about 500,000 feet of logs were destroyed by the fire; that he had placed about 400,000 feet of these upon skidways, and had cut about 250,000 feet of these from timber felled and peeled in 1878. It is the duty of the court to construe the contract read to you, and under and by force of which the plaintiff claims here; and, assuming that the logs were destroyed by reason of the unassisted negligence of the defendant, the first inquiry that confronts us is, had the plaintiff such a property or interest in these logs, or such a possession or lien upon them as enabled him to maintain this action for their destruction.[2]

[Under the contract it was the duty of the plaintiff to cut, haul, stock and saw into lumber the timber on the Blackman lot fit for sawing, and for this purpose to set up a saw-mill thereon and make the necessary roads, and neatly pile the lumber, under the direction of Mercy B. Taylor or her agent, and do all this work within two years; and in consideration of a full performance of all his covenants in this regard, Mercy B. Taylor was to give, deliver and award to him, after the lumber

Arguments.

was piled, such portion of it as it was agreed he should have as compensation for his labor : but all the lumber was to remain the property of Mercy B. Taylor until it was divided.] [2]

Under this contract he had no property in these logs. Had he such possession of, or lien upon them for his labor as will support suit for an injury to them ? We think not. [It is insisted that the plaintiff was at least a bailee of this property and had a lien upon it for his labor under the contract. While we do not assent to this view, we are of opinion that if it was a correct one, the settlement of Mercy B. Taylor with the defendant, for the injury or damage done these logs by the fire in question, would prevent a recovery by the plaintiff in this action. She was the owner of the property destroyed and a settlement of her claim, without reservation or exception, bars this suit. We do not think the evidence in the case warrants the submission to you of the question whether there was a reservation or exception, as in our view a finding that there was, could not stand, upon the evidence before us. It follows from these views that the plaintiff cannot recover, and we instruct you to find for the defendant.] [3]

The jury returned a verdict for the defendant, as directed. Judgment having been entered, the plaintiff took this writ, assigning as error :

1. The refusal of plaintiff's offer. [1]
2, 3. The parts of the charge embraced in [ ] [2] [3]

*Mr. H. N. Williams* and *Mr. I. McPherson* (with them *Mr. E. J. Angle* and *Mr. R. H. Williams*), for the plaintiff in error :

1. It seems clear to us that the court below should have permitted Mr. Codding to explain his statement of Mrs. Taylor's loss and damage. This writing was wholly ex parte, was delivered to the defendant's superintendent and explained to him fully by Mr. Elsbree. It is competent to give parol evidence of the surrounding circumstances out of which a writing arose: Aldridge v. Eshleman, 46 Pa. 420 ; Jones v. Patterson, 1 W. & S. 321.

2. The settlement with Mrs. Taylor of her damages only, not including the plaintiff's, was such a severance of rights of action by the act of the defendant, that it cannot complain or

take advantage of it. If one of several part owners of a chattel sue alone for a tort and the defendant do not plead in abatement, the other part owners may afterwards sue alone for the injury to their undivided shares, and defendant cannot plead in abatement of such action: 1 Chitty's Pl., § 66. If the defendant in an action of tort settle with one of the plaintiffs, he is still answerable to the other. The parties cannot be presumed to have covenanted against the tortious acts of strangers: Pollard v. Shaffer, 1 Dall. 210; Lyle v. Barker, 5 Binn. 457.

3. The plaintiff, under the contract with Mrs. Taylor, had at least the interest of a bailee in the lumber and logs destroyed by the fire. He had the exclusive possession of the land, and the timber and logs were delivered to him to be manufactured into lumber by him; he therefore had a lien on the logs or lumber for his labor: Pierce v. Sweet, 33 Pa. 151; Mathias v. Sellers, 86 Pa. 491; Cross v. Knickerbocker, 8 Phila. 496.

4. Undue significance was given in the court below to the clause or stipulation in the contract to the effect that all the lumber should remain the property of Mrs. Taylor until it was divided. But, in effect, this was a provision to secure to her her portion of the lumber, or payment for the timber in its natural state: Mitchell v. Commonwealth, 37 Pa. 187; Jenkins v. Eichelberger, 4 W. 121.

*Mr. John F. Sanderson* (with him *Mr. Rodney A. Mercur* and *Mr. Edward Overton*), for the defendant in error:

I. Haverly had no interest in the timber destroyed.

1. He was but a servant: Trout v. Kennedy, 47 Pa. 387. 2. He had no lien, for his payment was not to be until Mrs. Taylor delivered to him. A lien can be asserted only by a party who has an actual possession, and a claim to be enforced which is already complete: Lee v. Gould, 47 Pa. 398; Hartley v. Decker, 89 Pa. 470. Haverly had no right of possession, and, his labor being incomplete, he had no lien on the logs destroyed. 3. He must look to his employer for compensation. If the workman is employed in working up the materials, or adding his labor to the property of his employer, the risk is with the owner of the thing with which the labor is incorporated: Story on Bailm., § 425, 426 a.

II. If Haverly had a special property as bailee, he cannot recover.

This is because where, in the case of bailor and bailee, an injury is done to the property bailed, there is no joint action by them, but either may sue and recover for the whole injury. A recovery by either bars the other, and the one who recovers is accountable to the other to the extent of his interest in the property: Addison on Torts, D. & B. ed., 620 ; Story on Bailm., § 94 ; Lyle v. Barker, 5 Binn. 460 ; Orser v. Storms, 18 Am. Dec. 560 n.

OPINION, MR. CHIEF JUSTICE PAXSON :

We think the learned judge below inadvertently fell into error in this case. It is doubtless true that under the agreement between Mercy B. Taylor and the plaintiff, the title to the logs was in the former at the time they were destroyed by fire. We consider it equally true, however, that he had an interest in them which will sustain this suit against the defendant company. He had the possession, and a lien for the work and labor expended upon them. Clearly, it was not in Mrs. Taylor's power to deprive him of possession or lien. He could have held them against her had she attempted to deprive him of either. Nor can we doubt that had a stranger taken the logs away he could have sustained a suit therefor in his own name. This being so we are unable to see how a settlement between Mercy B. Taylor and the defendant company can deprive him of the right to sue the latter to recover the value of his interest whatever it was. Hence, when the plaintiff offered to explain the receipt given by Mrs. Taylor to the company, and to show that the $1.75 per thousand merely represented Mrs. Taylor's interest in the logs, we think the evidence should have been admitted. Whether the defendant company has been guilty of such negligence as renders them liable in this action is a matter not before us. All we decide is that the plaintiff had such interest in the property as entitles him to maintain this action.

> Judgment reversed, and a venire facias de novo awarded.